IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )   1:16-cr-42 (LMB) |
| ARDIT FERIZI, | ) |
| | ) |
| Defendant. | ) |

## ORDER

On December 3, 2020, this Court issued an Order granting defendant Ardit Ferizi's ("Ferizi" or "defendant") Renewed Emergency Motion for Compassionate Release and directing that he be released from the Bureau of Prisons (BOP) into the custody of U.S. Immigration and Customs Enforcement (ICE) for immediate removal to his home country, Kosovo. Eleven days later, the government moved to stay execution of the Order and filed a notice of appeal. On December 16, 2020, this Court denied the motion to stay, and on December 18, 2020, the Fourth Circuit also denied the government's motion to stay defendant's removal from the United States. Defendant was not promptly removed, apparently due in part to the Federal Bureau of Investigation (FBI) failing to produce his passport to immigration officials. In that delayed period of time, the FBI started investigating defendant's conduct while in BOP custody, and at some point in late December 2020 requested evidence from the United States Attorney's Office (USAO) for the Eastern District of Virginia. No one advised the Court that the FBI was investigating defendant nor did anyone in the USAO question the FBI's actions.

On January 7, 2021, Special Agent Dustin Reid swore out an affidavit to support a criminal complaint in the Northern District of California, charging that while he was incarcerated at FCI Terre Haute, defendant committed two offenses—wire fraud in violation of 18 U.S.C.

§ 1343 and aggravated identity theft in violation of 18 U.S.C. § 1028(A). United States v. Ferizi, No. 3:21-cr-27-WHA (N.D. Cal. Jan. 7, 2021) [Dkt. No. 1]. Multiple paragraphs in the affidavit supporting the complaint referenced a Terre Haute inmate who provided much of the evidence supporting the affidavit. See, e.g., ¶¶ 25, 32, 35. As a result of these charges being filed, defendant was taken out of ICE custody and placed in Marshals Service custody, which prevented the Court's release order from being executed. On January 21, 2021, a federal grand jury sitting in the Northern District of California returned a five-count indictment charging defendant with conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1349 and 1343 (Count I); wire fraud in violation of 18 U.S.C. § 1343 (Count II); possession of an unauthorized access device in violation of 18 U.S.C. § 1029(a)(3) (Count III); transfer of stolen identification documents in violation of 18 U.S.C. § 1028(a)(2) (Count IV); and aggravated identity theft in violation of 18 U.S.C. § 1028A (Count 5). United States v. Ferizi, No. 3:21-cr-27-WHA (N.D. Cal. Jan. 21, 2021) at [Dkt. No. 4].

In its brief to the Fourth Circuit appealing this Court's compassionate release decision, the government brought these new charges to the appellate court's attention. See United States v. Ferizi, No. 20-7830 (4th Cir. 2021). Defendant objected that this information should not have been included in the appeal because during the briefing and argument of defendant's motion for compassionate release, the government had not introduced any evidence of defendant engaging in criminal conduct while incarcerated. Defendant also argued that the government's decision to bring these new charges could be construed as a violation of the release order.

On November 16, 2021, the Fourth Circuit issued a per curiam order in which it observed that 36 days after the release order was issued, the California charges were filed. [Dkt. No. 121]. Recognizing that this Court had not been advised that defendant was allegedly involved in any

new criminal activity before the release order was issued, the release order was remanded with an instruction that this Court "consider in the first instance how the new charges, or other relevant evidence revealed since the district court's order of release, impact the discretionary § 3553(a) analysis for compassionate release." Id.

On February 15, 2022, California defense counsel filed an extensive Motion to Dismiss for Vindictive Prosecution and Request for an Evidentiary Hearing ("Motion to Dismiss"). United States v. Ferizi, No. 3:21-cr-27-WHA (N.D. Cal. Feb. 15. 2022) [Dkt. No. 40]. Among several meritorious arguments, that motion pointed out that much of the information in the affidavit supporting the California criminal complaint relied on an inmate with an established record of unreliability, which the affidavit failed to acknowledge. Id. at 9. The motion also pointed out that a significant amount of the information in the affidavit had been known by the FBI since 2016 when Ferizi revealed it in debriefings. Id. at 10. Had a Franks hearing been held, that affidavit would have been difficult to defend. See Franks v. Delaware, 438 U.S. 154 (1978).

On March 22, 2022—the day defendant's Motion to Dismiss was scheduled for argument—the California prosecutors moved to dismiss all charges against defendant, and the charges were dismissed that day. United States v. Ferizi, No. 3:21-cr-27-WHA (N.D. Cal. Mar. 22, 2022) [Dkt. No. 56].

Virginia defense counsel notified this Court on the same day of the dismissal. [Dkt. Nos. 129, 131]. On March 25, 2022, the parties were ordered to appear for a hearing on March 31, 2022, at which the government was directed to explain "how the decision was made to bring the California charges and why, on the day that defendant's Motion to Dismiss… was to be argued, those charges were dismissed." [Dkt. No. 135].

At the March 31, 2022 hearing, Eastern District of Virginia Assistant United States

Attorney ("AUSA") Danya Atiyeh explained that she had been unable to reach former AUSA William Frenzen, who was the Northern District of California USAO's Chief of the Corporate Fraud Strike Force and who had signed the indictment, to learn how the charging decision was made. She was advised by the new team of California prosecutors who took over the case that they decided to move to dismiss all charges after determining there was insufficient evidence of defendant's mens rea to support all but one charge, and that defendant had already served the amount of time for which he could be sentenced for that remaining charge. AUSA Atiyeh also acknowledged that the FBI was upset by the release decision in December 2020 and that she was contacted in late December by the case agent who wanted access to evidence in the USAO's custody. AUSA Atiyeh admitted that she did not advise the Court that the FBI was investigating defendant and did not question why the evidence was sought. AUSA Atiyeh also stated that prosecutors in the Eastern District of Virginia were not aware of the charges being brought until the complaint was filed in California.

Having considered the written and oral arguments of counsel, and having reviewed many of the pleadings and exhibits filed in the Northern District of California, the Court finds that there were elements within the Department of Justice who were so dissatisfied with this Court's decision to release defendant, and with both this Court's and the Fourth Circuit's decisions not to stay his release and removal to Kosovo, that they purposely tried to evade these decisions by filing very weak new charges against the defendant, all of which have since been summarily dismissed.

Despite this very troubling record, the government now asks the Court to reevaluate its decision to release defendant, no longer on the allegation that he engaged in misconduct while incarcerated, but on the "new" ground that the COVID-19 crisis which played a significant role

4

in that release decision has dramatically changed. Although the Court recognizes that widespread access to vaccinations and new treatments for the COVID-19 virus have lessened the danger posed by the disease and that infection rates have declined in the United States in recent weeks, the virus still poses a significant health threat, with over 600 people dying from the disease in the United States every week.[1] The Court also finds that nothing else has changed since the release order was issued other than defendant now having been in continuous custody for 16 additional months. As for the medical threat defendant still faces from continued incarceration, even though a fourth booster shot has just been recommended by the CDC to protect vulnerable populations from the next COVID wave,[2] the entire city of Shanghai is on lockdown from a COVID surge in China,[3] and the new B.A.2 subvariant, a "more contagious omicron," is on the rise in this country after causing outbreaks in Europe and China.[4] Defendant, who was only 19 years old when arrested, is still an asthmatic who requires daily treatment with corticosteroids and is obese, conditions which the CDC still lists as risk factors for both contracting and becoming very ill or dying from COVID. See People with Certain Medical Conditions, Centers for Disease Control and Prevention (Updated Feb. 25, 2022): https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 31, 2022).

---

[1] COVID Data Tracker Weekly Review: Deaths, Centers for Disease Control and Prevention (April 1, 2022), https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html (as of March 30, 2022, finding the 7-day average deaths at 627 per week).

[2] CDC Recommends Additional Boosters for Certain Individuals (Press Release), Centers for Disease Control and Prevention (March 29, 2022) https://www.cdc.gov/media/releases/2022/s0328-covid-19-boosters.html.

[3] Brenda Goh & Roxanne Liu, Shanghai expands COVID lockdown as new daily cases surge by a third, Reuters (March 30, 2022) https://www.reuters.com/world/china/shanghai-expands-lockdown-more-areas-new-local-cases-hit-5982-2022-03-30/.

[4] Spencer Kimball, More contagious omicron BA.2 subariant now dominant in the U.S., CDC says, CNBC Health and Science (March 29, 2022), https://www.cnbc.com/2022/03/29/more-contagious-omicron-bapoint2-covid-subvariant-dominant-in-the-us-cdc-says.html.

Additionally, nothing has changed the fact that Kosovo authorities have been fully cooperative with the investigation of this case. They assisted in bringing defendant out of Malaysia, where he was initially arrested, and extraditing him to the United States. Nothing has changed the fact that defendant spent several months in a Malaysian prison under brutal conditions. And to the extent the government is concerned about defendant reoffending, he will remain on 10 years of supervised release. Although probation officials will not be able to supervise him, this record shows that Kosovo authorities are fully capable of doing so.

Lastly, it would set a terrible precedent to reverse the decision to release a defendant based on a change of circumstances caused by the government's manipulation of the criminal justice system to create a delay that enabled the new circumstances to arise. The lack of respect for an orderly judicial process demonstrated by certain entities within the Department of Justice and the resulting waste of judicial resources expended in the California litigation should not be rewarded.

For all these reasons, the Court finds that defendant still satisfies the factors justifying compassionate release. Accordingly, it is hereby

ORDERED that the Order issued on December 3, 2020 [Dkt. No. 105] be and is REAFFIRMED; and it is further

ORDERED that defendant immediately be returned to ICE custody for prompt removal to Kosovo.

The Clerk is directed to forward copies of this Order to counsel of record.

Entered this 1st day of April, 2022.

Alexandria, Virginia

/s/ /MB
Leonie M. Brinkema
United States District Judge